# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13–7633 PA (VBKx) | Date | December 2, 2013 |
|---|---|---|---|
| Title | John Dunn v. Stacy Codikow, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

    Before the Court is a Motion for Preliminary Injunction filed by plaintiff John Dunn ("Plaintiff") (Docket No. 25). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for December 2, 2013, is vacated, and the matter taken off calendar.

    Plaintiff filed his Complaint on October 16, 2013. He then filed the operative First Amended Complaint ("FAC") the very next day. The FAC alleges claims against defendants Stacy Codikow and Professional Organization of Women in Entertainment Reaching Up ("Power Up") (collectively "Defendants") for: (1) copyright infringement; (2) unlawful business practices; and (3) conversion. According to the FAC, Plaintiff wrote a song titled "Finally" that Defendants have incorporated into the film "Girltrash: All Night Long" (the "Film"). The FAC alleges that Plaintiff and Defendants entered into a "Film Synchronization & Master Use License" (the "License Agreement") in November 2009 allowing Defendants to use certain specific songs written by Plaintiff in the Film. "Finally" was not one of the songs listed in the License Agreement.

    According to Plaintiff, the parties then entered into a "Co-Producer's Employment Contract" (the "Employment Contract") in February 2010. The Employment Contract referred to Plaintiff and his wife as "Co-Producers" and stated:

> Power Up hereby engages Co-Producer as a Work for Hire to perform
> Motion Picture Film Producing Services on the feature length motion
> picture currently entitled "Girltrash: All Night Long" (hereinafter referred
> to as the "Picture") and Co-Producers agrees [sic] to perform those
> services upon the terms and conditions specified by Power Up herein and
> throughout the employment engagement as needed and required by Power
> Up, including but not limited to donating their songs & Music to Power
> Up for use in the Picture. Co-Producers hereby agrees [sic] that Co-
> Producer's engagement is a Work for Hire and, as such, has completed all
> work, at the solicitation of, under the complete direction of, at the sole
> impetus and request of and with all creative input and direction from

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13–7633 PA (VBKx) | Date | December 2, 2013 |
|---|---|---|---|
| Title | John Dunn v. Stacy Codikow, et al. | | |

> Power Up. Co-Producer hereby assigns all rights in and to the Picture, including but not limited to all the Picture's elements, marketing materials, etc., and hereby agrees that they are the sole property of Power Up in perpetuity . . . including but not limited to, any and all intellectual property rights; moral rights; all domestic and international copyrights, extensions and renewals; publicity and promotional rights; distribution; alteration; exploitation, merchandising; interactive media rights; etc. Co-Producer has no ownership rights in and to the Picture.

(FAC, Ex. B.) The Employment Contract established a term of employment to "continue until the completion of all of Co-Producer's required services, through delivery of the Picture, as needed by Power Up." (Id.)

On October 17, 2013, one day after initiating this action, and on the same day he filed the FAC, Plaintiff also filed an Ex Parte Application for Temporary Restraining Order ("Application for TRO"). In both the FAC and Application for TRO, Plaintiff contended that the Employment Contract is "invalid and fraudulent" and "fraudulent and void" because "Plaintiff was never an employee of Defendants, never received any wages from defendant, never was subject to Defendants' exclusive supervision and control, and never met any of the requirements for an 'employee' under either state or federal law." The FAC alleges that Defendants have attempted to screen the Film at various film festivals over the last two years" and that each time, Plaintiff has sent a cease and desist letter to the festivals. At the time Plaintiff filed the Application for TRO, a screening of the Film was scheduled for October 24, 2013.

The Court denied Plaintiff's Application for TRO in an October 21, 2013 Minute Order. In denying the Application for TRO, the Court concluded that Plaintiff's conclusory assertion that the Employment Contract is "fraudulent and void," without any citation to relevant case law or evidence, fell well short of meeting his burden to establish a substantial likelihood of success on the merits. Nor did the FAC's allegation that the Employment Contract is "invalid and fraudulent" succeed in raising a serious question on the merits. In its Minute Order, the Court noted that Plaintiff belatedly argued in his Reply that the Employment Contract is unenforceable because it does not satisfy the Copyright Act's statutory requirements for a work-for-hire agreement. However, because those arguments were not made in Plaintiff's moving papers, and therefore provided Defendants with no opportunity to respond, the Court did not consider them. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (holding that a "district court need not consider arguments raised for the first time in a reply brief"). The Court additionally concluded that Plaintiff had also failed to establish the requisite irreparable harm to justify the injunctive relief he sought based on his delay in filing his Complaint despite knowing of the alleged infringement for two years and the minimal showing of any other facts suggesting irreparable harm that could not be compensated by monetary damages.

Less than two weeks after the Court denied his Application for TRO, Plaintiff filed the current Motion for Preliminary Injunction. In his Motion, Plaintiff makes the work-for-hire arguments he included in his Reply in support of his Application for TRO but had neglected to include in his moving

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13–7633 PA (VBKx) | Date | December 2, 2013 |
|---|---|---|---|
| Title | John Dunn v. Stacy Codikow, et al. | | |

papers. Plaintiff additionally provides evidence that Defendants recently announced plans to distribute DVDs of the Film beginning on December 15, 2013.

To the extent Plaintiff seeks a preliminary injunction based on arguments concerning the purported invalidity of the work-for-hire provisions contained in the Employment Agreement that he should have but failed to include in his moving papers in support of the Application for TRO, Plaintiff is, in essence, seeking reconsideration of the Court's order denying the Application for TRO. Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). A "motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999); see also McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999). Local Rule 7-18 further provides that a party may bring a motion for reconsideration only by demonstrating:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

Local Rule 7-18. Plaintiff's work-for-hire arguments should have been made in his moving papers in support of the Application for TRO. As such, Plaintiff's Motion for Preliminary Injunction fails to satisfy the requirements of Local Rule 7-18 or the other substantive and procedural requirements for reconsideration. Nevertheless, the Court will consider the merits of Plaintiff's Motion.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id. The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions as part of this four-element test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this "sliding scale," a preliminary injunction may issue "when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," as long as the other two Winter factors have also been met. Id. (internal citations omitted). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13–7633 PA (VBKx) | Date | December 2, 2013 |
|---|---|---|---|
| Title | John Dunn v. Stacy Codikow, et al. | | |

carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997).

A plaintiff's delay in seeking relief weighs against granting a TRO or preliminary injunction. See Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); Lydo Enters., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief"); Hi-Rise Technology, Inc. v. Amateurindex.com, 2007 WL 1847249, at * 4 (W.D. Wash. June 27, 2007) ("Such a long delay in seeking relief weights against granting a temporary restraining order or a preliminary injunction."). To justify ex parte relief, "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." Mission Power Eng'g Co. v. Continental Cas. Co., 883 F. Supp. 488, 492–93 (C.D. Cal. 1995). Here, as alleged in the FAC, Plaintiff has known of the alleged infringement for two years. In denying the Application for TRO, the Court concluded that this delay justified the denial of Plaintiff's request for preliminary injunctive relief.

In his Motion for Preliminary Injunction, Plaintiff contends that this delay does not support a finding of a lack of irreparable harm because, during the two years he was aware of the alleged infringement, Plaintiff continually acted promptly to defend his intellectual property rights by sending cease and desist letters whenever Defendants announced a plan to exhibit the Film. Until recently, those efforts were successful in preventing the exhibition of the Film without the necessity of commencing an action. When, in advance of the October 24, 2013 showing of the film, the cease and desist letters proved ineffective, Plaintiff promptly instituted this action. Despite Plaintiff's pre-litigation diligence in attempting to prevent the exhibition of the Film, the Court continues to believe that the delay in filing this action and seeking injunctive relief of two years provides at least some evidence of a lack of the type of irreparable harm necessary to support the injunctive relief Plaintiff now seeks. See Guess?, Inc. v. Tres Hermanos, 993 F. Supp. 1277, 1286 (C.D. Cal. 1997) (concluding that a delay of nine months before filing action during which plaintiff sent a cease and desist letter did not constitute an undue delay sufficient to justify denial of motion for preliminary injunction). While Plaintiff's delay alone may not be sufficient to justify the denial of his Motion for Preliminary Injunction, he must still meet his burden that he has a substantial likelihood of success on the merits, that he is likely to suffer irreparable harm, and that the balance of equities tips sharply in his favor.

Plaintiff asserts that the Employment Contract is unenforceable because it does not satisfy the Copyright Act's statutory requirements for a work-for-hire agreement. A "work made for hire" is an exception to the general rule that the author of a work is the owner of the copyright in that work. 17 U.S.C. § 201(a), (b). In the case of works made for hire, "the employer or other person for whom the work was prepared is considered the author" and, thus, the copyright owner of the work. Id. Section 101(2) states that certain works "shall be considered a work made for hire" when they are "specially ordered or commissioned" and "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." Such works may be "for hire" even if the person

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13–7633 PA (VBKx) | Date | December 2, 2013 |
|---|---|---|---|
| Title | John Dunn v. Stacy Codikow, et al. | | |

creating them is an independent contractor rather than employee. 17 U.S.C. § 201(b); Cmty. for Creative Non-Violence v. Reid ("CCNV"), 490 U.S. 730, 742, 109 S. Ct. 2166, 2173-74, 104 L. Ed. 2d 811 (1989) (holding that Section 101(2) work for hire doctrine applies to independent contractors).

Although Plaintiff spends a significant portion of his Motion asserting that he is not an employee for purposes of § 101(1)'s definition for a work made for hire by an employee, he also contends that the Employment Contract fails to satisfy the requirements for a "work-for-hire" agreement under § 101(2). Section 101(2)'s requirements are not nearly as exacting as Plaintiff contends. As an initial matter, the controlling Ninth Circuit authority on § 101(2)'s work-for-hire provisions applicable to independent contractors, which neither party cited to, appears to be Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136 (9th Cir. 2003). Section 101(2) applies to nine specific types of copyrightable material, including "a work specially ordered or commissioned for use . . . as a part of a motion picture or other audiovisual work . . . ." 17 U.S.C. § 101(2). Music intended to be incorporated into a motion picture unquestionably falls within this enumerated category. See Warren, 328 F.3d at 1140 n.4 (holding that a work made for hire agreement commissioning music for a television program satisfied the requirements of § 101(2) as a part of an audiovisual work). Indeed, the language in the work-for-hire agreements at issue in Warren contain very similar language to the Employment Contract signed by Plaintiff. Id. at 1140-41 (quoting contractual language). In Warren, the Ninth Circuit enforced the contracts as valid § 101(2) work-for-hire agreements even though "the agreements did not use the talismanic words 'specially ordered or commissioned' . . . for there is no requirement, either in the Act or the caselaw, that work-for-hire contracts include any specific wording." Id. at 1141.

Here, in Plaintiff's Declaration filed in support of the Motion for Preliminary Injunction, he states:

> In the summer of 2010, after filming on the movie was complete and it was "wrapped," I went on tour with my band, Killila. Angela Robinson, screenwriter of the Film, came to visit my band on tour and go to a show. While visiting us on tour, Ms. Robinson encouraged me to write "Finally," which I did. I did not write the Song with the help of or with any compensation from the Defendants, and I did not understand that Ms. Robinson is or ever was an agent of the Defendants. I did know that Ms. Robinson hoped to incorporate the Song into the Film, but I believed and assumed that if the Song was so incorporated, Defendants would procure a license to the Song as they had every other one of my songs in the License Agreement.

(Declaration of John Dunn ¶ 6.) According to the Declaration of Stacy Codikow, several months after filming was complete in February 2010, Defendants "came to believe that there should be a musical sequence at the very beginning of the film. I provided ideas to producer and writer Angela Robinson and others involved in the film." (Declaration of Stacy Codikow ¶ 6.) Ms. Codikow's description of "Finally," which Plaintiff never refutes, is that the "song lyrics consist of the story of the four main

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13–7633 PA (VBKx) | Date | December 2, 2013 |
|---|---|---|---|
| Title | John Dunn v. Stacy Codikow, et al. | | |

characters in the Film and other story elements. The song was then pre-recorded with all the Film's actors singing their roles in the song." (Id.) All of these facts are consistent with the Employment Contract's language that Plaintiff's "engagement is a Work for Hire and, as such, has completed all work, at the solicitation of, under the complete direction of, at the sole impetus and request of and with all creative input and direction from" Defendants and that this included Plaintiff's "songs & Music . . . for use in the Picture." (FAC, Ex. B.) Given similar contractual language, the Ninth Circuit concluded in Warren that such an agreement "conclusively demonstrated by the plain language of the contracts" that "the works were created at the behest" of the employer. Warren, 328 F.3d at 1142.

Plaintiff's reliance on Easter Seal Soc'y for Crippled Children & Adults v. Playboy Enters., 815 F.2d 323 (5th Cir. 1987), is misplaced. Unlike the Employment Contract at issue here, the agreement in Easter Seal Soc'y made no mention of it being a work-for-hire" and "[t]here was no mention of copyrights." Id. at 324. Easter Seal Soc'y simply does not deal with the issues presented in this instance or in any way control over the Ninth Circuit's analysis in Warren. For all of these reasons, the Court concludes that Plaintiff has failed to establish a substantial likelihood of success on the merits that the Employment Contract is not a valid and enforceable work-for-hire agreement under § 101(2), and that he, and not Defendants, should be considered the authors of "Finally."

The Court additionally concludes that in addition to his delay in instituting this action and seeking injunctive relief, Plaintiff has not succeeded in establishing that the failure to enjoin Defendants' release of the film will result in significant irreparable harm. Specifically, Plaintiff is concerned that if "Defendants are able to sell and distribute my Song worldwide without a license, other filmmakers may attempt [to] do the same, preventing me from being able to demand a license fee or commission for that music, compromising my rights in other of my songs besides 'Finally,' and forcing me to have to undertake expensive copyright infringement litigation each time another filmmaker follows Defendants' example and uses my music without a license." (Declaration of John Dunn ¶ 13.) Because Plaintiff signed a work-for-hire agreement in this instance in exchange for a co-producer credit on the Film, his fear that other filmmakers, with whom he has no contractual relationship may steal his songs, has nothing to do with any harm he may face if the Court denies his requested injunction. Moreover, Plaintiff's legitimate concern that the release of the Film may result in others uploading the song illegally is, unfortunately, a risk that all performers face in this technological age whenever they perform. The Court concludes that this risk does not satisfy the irreparable harm standard for issuance of the injunction Plaintiff seeks. Nor does the balance of equities tip sharply in Plaintiff's favor.

For all of the foregoing reasons, the Court denies Plaintiff's Motion for Preliminary Injunction.

IT IS SO ORDERED.